## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| LISA DOVERSPIKE,<br><br>                    Plaintiff,<br><br>    vs.<br><br>JOHN J. MURPHY, AND KJM<br>INVESTMENTS LLC, AND MICHAEL<br>ANTHONY ALLEN,<br><br>                    Defendants. | **CV-21-29-H-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Lisa Doverspike ("Doverspike") filed this action in Montana state court to challenge Michael Allen's ("Allen") sale of a 2009 Lamborghini Gallardo ("the Vehicle") to John J. Murphy ("Murphy") and KJM Investments, LLC ("KJM"). (Doc. 1-1). Doverspike seeks to void Murphy's purchase or enjoin the sale of the Vehicle and collect damages for an alleged fraudulent transfer intended to deprive Doverspike of her interest in the Vehicle. (Doc. 1-1 at 7).

Murphy removed this action based on diversity jurisdiction on April 6, 2021. (Doc. 1). Doverspike filed an Amended Complaint on May 3, 2021, to join Allen

as a defendant and add an additional claim for civil conspiracy between Allen, Murphy, and KJM. (Doc. 11).

Murphy filed a Motion to Dismiss for lack of personal jurisdiction on May 17, 2021. (Doc. 17). Murphy argues that he has not purposefully availed himself of Montana court jurisdiction. (Doc. 18 at 3). Murphy argues in the alternative that the Court should transfer the matter to the Southern District of Florida. (Doc. 18 at 11). Doverspike responds that Murphy remains subject to Montana court jurisdiction because he hid assets from a Montana court-appointed receiver ("Receiver") and submitted contradictory and fraudulent affidavits to Montana courts. (Doc. 19 at 2). The Court held a motion hearing on July 19, 2021. (Doc. 28).

## BACKGROUND

Doverspike and Allen previously lived together in southern California. (Doc. 4 at 1). Allen entirely owned Metro Computer & Electronics, Inc. ("Metro"), a company with assets including the Vehicle. (Doc. 11 at 3). Doverspike acquired Metro from Allen on July 17, 2018. (Doc. 11 at 3). Doverspike then removed Allen as an officer of the company. *Id*. Doverspike remains in California while Allen appears to reside in Florida. (Doc. 18 at 4).

2

Allen allegedly continued to sell Metro assets even after Doverspike took control of the company. (Doc. 11 at 3). Doverspike and Metro filed suit in a California state court to protect Metro's assets, including the Vehicle. *Id*.

Doverspike filed suit in Montana's First Judicial District Court on January 22, 2020. *See* Cause No. ADV-2020-107 ("Montana Action"). *Id*. The Vehicle had been registered in Montana. (Doc. 6 at 2). Doverspike sought to validate her security interests in the Vehicle, among other cars, and prevent Allen from transferring any more Metro assets. (Doc. 11 at 3).

Doverspike served Allen with the complaint in the Montana Action on February 12, 2020. *Id*. Allen allegedly sold the Vehicle on February 14, 2020, to his long-time friend Murphy. (Doc. 19-4 at 3). Murphy paid $110,000, in cash, for the Montana-registered Vehicle. (Doc. 19-4 at 3). The in-person exchange allegedly occurred in Murphy's home state of Florida without any accompanying documentation or change in title. *Id*. Doverspike alleges the price falls far below the Vehicle's market value. (Doc. 11 at 11–12). It remains unclear whether Murphy purchased the Vehicle himself, or as an agent of KJM, a Nevada-incorporated company that Murphy owns solely, with its principal place of business in Florida. (Doc. 11 at 2).

Montana's First District Court issued a Temporary Restraining Order on March 20, 2020, and a Preliminary Injunction on May 1, 2020. (Doc. 19 at 5).

3

Those orders enjoined Allen from advertising and selling the Vehicle and other cars subject to the Montana Action. (Doc. 19 at 6). Doverspike sought the appointment of a Receiver as she suspected Allen sold assets in violation of those orders. *Id*. The Montana court granted Doverspike's application on August 28, 2020. *Id*. The Montana court appointed a Receiver and empowered him to take possession of the Vehicle and other cars on October 22, 2020. (Doc. 19-1).

Allen testified on October 28, 2020, in Doverspike's California state court proceeding, that he possessed the Vehicle, and that he stored the Vehicle in a Nevada garage. (Doc. 19-2 at 2). In response, the Nevada state court granted an ancillary receivership order, authorizing the Montana Receiver to seize the Vehicle and other cars in Nevada. (Doc. 11 at 5); District Court of Clark County, Nevada, Case No. A-200823989-P. The Receiver successfully took possession of several cars in Nevada subject to the Montana Action, but the Vehicle could not be found with the other cars in the Nevada garage.

Allen changed his story on December 7, 2020. (Doc. 11 at 6). Allen testified for the ancillary receivership proceeding in Nevada that he had sold the Vehicle to an unspecified purchaser back in February 2020. (Doc. 11 at 6). Allen later clarified to the Nevada court on December 21, 2020, stating that he sold the Vehicle on February 14, 2020 to "KTM Investments LLC" (presumably KJM) and transported the Vehicle to Florida himself (Doc. 19-4 at 4).

4

Murphy submitted an affidavit in the Montana Action on January 13, 2021. (Doc. 19-5). Murphy claimed that he purchased the Vehicle as an investment. *Id*. at 2. Murphy also claimed that he possessed the missing Vehicle in Florida. *Id*. Finally, Murphy asserted that he, not KJM, purchased the Vehicle. *Id*. Murphy possesses no formal paperwork in connection with the sale of the Vehicle and concedes that he cannot sell the Vehicle without such paperwork. *Id*. Murphy now claims to have entered into this high-dollar cash arrangement because he and Allen have had a long friendship and Murphy trusts Allen to provide the paperwork when the underlying litigation concludes. *Id*.

Allen's counsel emailed Murphy to obtain the Vehicle's location on February 9, 2021. (Doc. 19-6 at 4). Allen's counsel noted that the Montana state court had ordered Allen to provide the location of the Vehicle. *Id*. Murphy responded with the address and stated his intent behind the purchase of the Vehicle, in cash, as helping Allen out of a "cash crunch"—an assertion appearing to contradict Murphy's affidavit submitted to Montana state court. (Docs. 19-6 at 4; 19-5 at 2).

Murphy filed a Bankruptcy Petition in the U.S. Bankruptcy Court for the Southern District of Florida on June 14, 2021. *See* (Doc. 20). Murphy confirms that he is the sole debtor in the bankruptcy proceeding. *Id*. KJM is not a co-debtor in the bankruptcy proceeding. *Id*. Murphy filed his Statement of Financial Affairs to

the bankruptcy court on June 28, 2021. (Doc. 27-2). Murphy's statement lists the Vehicle's owner as Allen. *Id*. at 6. Murphy does not list the Vehicle as an asset in his Bankruptcy Schedules. *See* (Doc. 27-1). Murphy claims instead that he is holding the Vehicle for Allen. (Doc. 27-2 at 6).

Doverspike filed this action in Montana state court against Murphy and KJM alleging fraudulent transfer under Montana's Uniform Fraudulent Transfer Act. (Doc. 1-1). Doverspike sued Murphy and KJM because it remains unclear whether Murphy purchased the Vehicle for himself, on behalf of KJM acting as an agent, or is merely holding the Vehicle for Allen. Murphy removed the action to federal court on basis of diversity. Doverspike later filed an amended complaint, adding Michael Allen as a party, and adding an allegation of conspiracy to commit a fraudulent transfer against all Defendants. Murphy and KJM filed a motion to dismiss, or in the alternative, transfer Doverspike's amended complaint to the Southern District of Florida.

## ANALYSIS

The Court will first analyze whether it possesses personal jurisdiction over Murphy and KJM. The Court will then analyze whether Florida would constitute a more convenient forum for the parties to resolve the dispute.

## I.   Personal Jurisdiction for Civil Conspiracy

A federal court may only hear a case if it retains personal jurisdiction over the parties. A plaintiff must show that the court possesses general or specific jurisdiction over the defendants on a motion to dismiss under Fed. R. Civ. P. 12(b)(2). *Daimler AG v. Bauman*, 571 U.S. 117, 127–28 (2014). A plaintiff must make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Doverspike does not argue that the Court possesses general jurisdiction over Murphy or KJM. The question remains whether the Court can exercise specific jurisdiction over Murphy and KJM.

A court may exercise specific jurisdiction over non-resident defendants who maintain minimum contacts with the relevant forum such that the court's exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific jurisdiction proves appropriate when: (1) permitted by the relevant state's long-arm statute; and (2) the exercise of that jurisdiction does not violate federal

due process. *See Fireman's Fund Ins. Co. v. Nat. Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). The Court will analyze each factor in turn.

### a. Montana's Long-arm Statute

To determine whether specific jurisdiction exists for tort claims under Montana's long-arm statute, the Montana Supreme Court directs courts to examine: (1) whether there is a valid claim resulting in accrual of a tort action within Montana; and (2) whether the valid claim for relief arises from the alleged actions. *Ford Motor Company v. Montana Eighth Judicial District Court*, 443 P.3d 407, 412–13 (Mont. 2019). *See* M. R. Civ. P. § 4(b)(1)(B).

Montana law requires five elements to prove a civil conspiracy: (1) two or more persons (a person may be a corporation); (2) an object to be accomplished; (3) a meeting of the minds on the object; (4) one or more unlawful acts; and (5) damages as to the proximate result. *See Grenz v. Medical Management NW. Inc.*, 817 P.2d 1151, 1154 (Mont. 1991). A conspiracy claim must involve more than conclusory statements. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). A plaintiff must allege facts that answer the basic questions of who did what, to whom, with whom, where, and when. *Id*. A plaintiff can use circumstantial evidence to establish a civil conspiracy. *Schumacker v. Meridian Oil Co.*, 956 P.2d 1370, 1373-74 (Mont. 1998).

8

Doverspike sufficiently pleaded facts that would allege a conspiracy. Allen and Murphy spoke about transferring the Vehicle only after Doverspike sued Allen in California. Allen then hurried a secret transfer to Murphy two days after being served with the Montana complaint. Allen concealed the transfer when deposed in the California action. (Doc. 19-2 at 2–3). Murphy knew Allen did not possess a present right to sell the Vehicle. Murphy also knew, before accepting transfer of the Vehicle, that it was subject to a receivership order. (Doc. 19-5 at 2). All Defendants knew that Doverspike sought possession of the Vehicle, but rather than wait to see who possesses rightful ownership, the Defendants together arranged for it to be as far away from Montana courts as possible.

The conspiracy claim centers on the alleged "meeting of the minds" between Allen and Murphy to commit an "unlawful overt act" to deprive Doverspike of the Vehicle. Much of the evidence supporting the claim originates from contradictory, and potentially fraudulent, declarations filed by Allen and Murphy in Montana state courts or in response to the Montana state court receivership order. The joint actions of the Defendants potentially deprived Doverspike of full relief in the underlying Montana lawsuit. Montana's long-arm statute provides the Court with authority over Doverspike's civil conspiracy claim.

9

### b. Federal Due Process

A non-resident stands subject to the jurisdiction of a forum state when: (1) the non-resident defendant purposefully directed his activities at the forum or performed an act that purposefully availed himself of the privilege of conducting activity within the forum (known as "minimum contacts"); (2) the claim arises from or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction remains reasonable. *Schwarzenegger*, 374 F.3d at 801–02.

The plaintiff bears the burden of proving the first two elements. If the plaintiff succeeds, the defendant must "present a compelling case" that the exercise of such jurisdiction would be unreasonable. *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). One tortious act, standing alone, may satisfy all three elements if the act is aimed at a resident of the form or has an effect in the forum. *Paccar Intern., Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985).

### i. Minimum Contacts

Courts analyze whether a non-resident tortfeasor purposefully availed themself of the forum state with a so-called "purposeful direction" analysis. *Schwarzenegger*, 374 F.3d at 802–03. The Ninth Circuit uses a three-part effects test for purposeful direction analysis. *Picot v. Weston*, 780 F.3d 1206, 1213–14 (9th Cir. 2015) (quoting *Calder v. Jones*, 465 U.S 783, 788–89 (1984)). Under this

10

test, a defendant purposefully directed his activities at the forum if he: (1) committed an intentional act; (2) expressly aimed at the forum state; and (3) caused harm that the defendant knows is likely to be suffered in the forum state. *Id*.

An intentional act refers to an ordinary physical act intentionally performed by the defendant regardless of the desired consequences. *Schwarzenegger*, 374 F.3d at 806. If the defendant knows his acts will reach a state and have a potential impact on the plaintiff, and defendant knows that the harm would be felt in that state, the acts are purposefully directed at the forum. *Calder*, 465 U.S. at 788–89.

Murphy committed several intentional acts. Murphy privately conferred with his close friend Allen and arranged for the Vehicle's transfer. (Doc. 18-1 at 2). Murphy submitted contradictory (allegedly fraudulent) affidavits to Montana courts. *See* (Doc. 19-5 at 2); *see also* (Docs. 18-1 at 3; 19-6 at 4; 27-2 at 6). Lastly, Murphy accepted a secret transfer from Allen that frustrated the Montana state court's order to take possession of the Vehicle. (Doc. 19-6 at 4); *accord* (Doc. 19-4 at 3). Murphy intentionally performed these acts regardless of motive.

The U.S. Supreme Court determined that a California court could exercise jurisdiction over defendants who caused a libelous article to be published in Florida, but circulated in California, because the defendants' single act "expressly aimed" at the forum proved enough to cause a detrimental effect in the forum state. *Calder*, 465 U.S. at 788–89. Defendants in *Calder* argued that the mere fact one

11

could foresee an effect in a forum state should not prove sufficient for assertion of

jurisdiction. *Id*. The Supreme Court still determined that the defendants could

"reasonably anticipate being hailed into court there" to answer for the truth of their

printed statements. *Id*. Defendants knew the plaintiff had business in the forum. *Id*.

The forum was the largest consumer of the magazine the article was written. *Id*.

These factors persuaded the Supreme Court that sufficient minimum contacts

existed to satisfy this element. *Id*.

Murphy's acts were performed remotely, similar to *Calder*. The harm also

proves directed at the forum. Injured parties in Montana need not travel to other

states to seek relief from residents there who knowingly cause injury in Montana.

*See Calder*, 465 U.S. at 789. If Allen and Murphy conspired to transfer the Vehicle

to save Allen from a potentially unfavorable judgment in the Montana Action, the

harm must be directed at this forum.

Courts also must look to the defendant's contacts with the forum state itself

when assessing harm suffered. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Injury

to a forum resident, alone, fails to sufficiently establish a connection with the

forum. *Id*.  The injury is jurisdictionally relevant only insofar as it shows that the

defendant formed a contact with the forum state. *Id*.

The alleged conspiracy injured Doverspike in a way that created a

jurisdictional connection to Montana. Murphy submitted sworn affidavits in

12

Montana state court. Murphy's alleged attempt to frustrate the potential judgment of the Montana state court by submitting apparently falsified affidavits represents a jurisdictional contact with the forum state. The continued efforts by Allen and Murphy to provide Montana courts with untrue and contradictory statements undermines Montana's judicial process.

There exists no forum better suited than Montana to satisfy the *Calder* effects test for this claim. The well-pleaded claim establishes that Murphy's intentional conduct in Florida proved plausibly calculated to unlawfully dispossess Doverspike of a judgment in Montana. This element favors the exercise of jurisdiction.

### ii.    Claim Arising from Contacts

When judging minimum contacts, courts look at the relationship among the defendant, the forum, and the claims. *Calder*, 465 U.S. at 788. Murphy possesses little contact with Montana. These limited contacts give rise to the conspiracy claim. It is not necessary for this Court to make many presumptions of truth as to Doverspike's pleadings to draw this conclusion. Murphy's relationship to Doverspike arose through Allen. Doverspike sued Allen seeking to vindicate her ownership of the Vehicle. Murphy and Allen designed an apparent plan to secretly transfer the Vehicle once Doverspike filed the Montana Action.

Murphy's relationship to the forum, with regard to the conspiracy claim, runs through Montana's courts. The Montana state court sought to resolve the Montana Action by appointing the Receiver, almost one year ago, to take possession of the Vehicle. (Doc. 19-1). The alleged conspiracy frustrated the Montana state court's ability to execute its order and provide full relief to Doverspike. The Montana court relied on Allen's affidavit given in the Nevada ancillary receivership proceeding, which stated that Allen possessed the Vehicle in Nevada. (Doc. 19-2 at 2–3).

Allen's affidavit puzzles the Court. The plan with Murphy to relocate the Vehicle to Florida had already been executed months before the filing of Allen's affidavit. (Docs. 19-3 at 2; 19-4 at 3; 19-5 at 2). Murphy described the transfer to the Montana state court as an investment for himself when asked about the transfer. (Doc. 19-5 at 2). Murphy told this Court the transfer was an investment intended for KJM. (Doc. 18-1 at 3). Murphy told both courts the transfer was intended as an investment despite telling Allen's counsel the paperless cash transaction was intended to help his friend out of a "cash crunch." (Doc. 19-6 at 4). Murphy later denied *any* ownership interest in the Vehicle to a Florida bankruptcy court. (Doc. 27-2 at 6).

The claim of conspiracy directly ties Murphy to the forum state. Murphy's ties to the Defendant that give rise to the conspiracy claim directly connect him to Montana. This element similarly favors the exercise of jurisdiction.

### iii.   Fairness and Justice

States retain a special interest in exercising jurisdiction over those who commit a tortious act within the state. *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1288 (9th Cir. 1977). It may prove unreasonable, however, to subject non-resident defendants to jurisdiction in the forum state. *Id*. Courts should consider five fairness factors in determining whether litigation in the forum would be unfair: (1) defendant's burden of litigating in the forum state; (2) the forum's interest in litigating in its own courts; (3) plaintiff's interest in litigating in the forum; (4) the interstate judicial system's interest in most efficient resolution; and (5) the shared interest among the potential forum states in furthering substantive social policy. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

In *Volkswagen*, plaintiffs argued that Oklahoma possessed jurisdiction over the defendants, a motor vehicle wholesaler and a retailer, based on an automobile accident in Oklahoma. *Id*. at 288. Plaintiffs purchased a car in New York *Id*. The car burst into flames while they drove through Oklahoma. *Id*. The Supreme Court denied jurisdiction despite a significant portion of the injury occurring there. *Id*. at

15

295–96. The defendants had no business in the forum—no income, advertisements, assets, solicitation, employees, offices, etc. *Id*. at 286–87. *Volkswagen* involved a products liability claim where defendants possessed no way of knowing the car, once sold, would travel to the forum state. Murphy, by contrast, stands accused of committing an intentional tort purposefully directed at the forum state.

This case proved more similar to *Data Disc*. 557 F.2d 1280. The Ninth Circuit determined the exercise of jurisdiction to be reasonable based on the non-resident defendant's conduct. *Id*. at 1289. The defendant in *Data Disc* made material misrepresentations intended to induce reliance (or could reasonably expect to induce reliance) in California. *Id*. at 1288–89. The Ninth Circuit applied convenience factors that suggested one of a few east coast states would be a preferable forum to California. *Id*. at 1288. Employees needed as witnesses and the equipment subject to the dispute were found in Maryland. *Id*. The defendant was a Florida corporation with its principal place of business in Virginia. *Id*. at 1283. The factors were still not enough to overcome the clear justification for California's exercise of jurisdiction due to its interest in deterring the purposeful contacts of the defendant giving rise to the claim. *Id*. at 1288.

Murphy engages in no business within Montana. Murphy owns no property in Montana. Doverspike's pleadings show, however, that Murphy directed his alleged conspiracy at Montana courts. Murphy knew of the Montana Action and

16

purposefully inserted himself into the dispute by filing the affidavit. (Doc. 19-5). It would be reasonable for Murphy to expect that his allegedly false statements involving a Montana court would open him to the jurisdiction of the Montana courts. The Court's exercise of jurisdiction in this case proves reasonable.

## II.   Personal Jurisdiction for Fraudulent Transfer

The same analysis applies to the fraudulent transfer claim. The Court will determine whether Montana's long-arm statute permits the exercise of jurisdiction and whether the potential exercise of that jurisdiction would comport with due process. Montana's Uniform Fraudulent Transfer Act (UFTA) governs the tort of an alleged fraudulent transfer in Montana.

### a.  Montana's Long-arm Statute

The jurisdictional test remains the same for all torts in Montana. *See Ford*, 443 P.3d at 412–13. Montana's UFTA makes unlawful any transfer made with either: (1) actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving reasonably equivalent value in exchange for the transfer. *See* Mont. Code Ann. § 31-2-333.

A plaintiff can establish fraudulent intent with circumstantial evidence under the UFTA. *See In re Jarvar*, 430 B.R. 607, 628 (2010). Doverspike alleges that Allen and Murphy purposefully concealed the Vehicle's sale. Allen falsely testified in California state court that he still possessed the Vehicle. (Doc. 19-2 at 2). Allen

17

stated he would only sell the Vehicle when it was legally possible. *Id*. at 4. Allen later changed his statement when the court-appointed Receiver tried to collect the Vehicle. (Doc. 19-3). Allen submitted a declaration to the Nevada court that he sold the vehicle to an unspecified purchaser in February 2020. (Doc. 19-3 at 2). Allen now admits that he sold the Vehicle to Murphy two days after having been served with the complaint in Doverspike's Montana Action. (Doc. 19-4 at 3).

Factual disputes remain as to Murphy's motives for purchasing the Vehicle. (Doc. 19 at 5-7). Murphy expressed different reasons for the purchase on three separate occasions in three separate forums. Murphy first told the Montana state court that he purchased the Vehicle for himself. (Doc. 19-5 at 2). Murphy next claimed in the Nevada court that he purchased the Vehicle from Allen to help Allen out of a "cash crunch." (Doc. 19-6 at 4). Finally, Murphy claims to this Court that he purchased the Vehicle as investment for KJM. (Doc. 4-1 at 3). These wildly inconsistent statements presented to three different courts combined with the allegedly inadequate value of the considerations exchanged in the underlying litigation lead Doverspike to claim that Defendants hindered and delayed her ability to recover a judgement debt.

Doverspike emphasizes the presence of numerous so-called "badges of fraud" listed under the UFTA: the transfer was to an insider; the debtor allegedly retained possession of the property; the transfer was concealed; the debtor was

18

sued immediately before the transfer was made; the debtor concealed assets; the consideration received by debtor is [allegedly] significantly below the property's value; and the transfer occurred shortly before a substantial debt incurred. Mont. Code Ann. § 31-2-333(2).

Doverspike's assertions prove plausible based on circumstantial evidence and the presence of many badges of fraud. This claim remains valid under Montana law. Enough disputes of fact exist as to the reason(s) for the Vehicle's transfer. The relief sought relates directly to the fraudulent transfer claims. The Montana long-arm statute provides the Court with jurisdiction over Doverspike's fraudulent transfer claim.

### b. Due Process

The same jurisdictional analysis applies to the fraudulent transfer claim: minimum contacts, claims arising from the contacts, and reasonableness. *See Schwarzenegger*, 374 F.3d at 801–02; *Burger King*, 471 U.S. at 476–78. Those factors again favor the exercise of jurisdiction for substantially similar reasons to the conspiracy claim.

Murphy accepted transfer of a vehicle licensed and titled in Montana also subject to a receivership order executed by a Montana court. The Ninth Circuit has not addressed whether an alleged fraudulent transfer would constitute the forum's exercise of jurisdiction. The courts of this district and other circuit courts have

19

determined the exercise of jurisdiction appropriate, however, where the parties made a transfer to avoid a debt owed to the plaintiff in the forum state. *See generally Wheaton Equipment Co. v. Franmar, Inc.*, 2009 WL 464337 (D. Idaho 2009); *Air Products and Controls Inc. v. Safetech Intern., Inc.*, 503 F.3d 544 (6th Cir. 2007); *Fifth Third Bank v. Gentile*, 2008 WL 2390780 (N.D. Ohio 2008).

Doverspike does not live or do much business in Montana, but Defendants knew before making the transfer that Doverspike sued Allen in Montana to collect a debt. Murphy's informed acceptance of the transfer despite the Montana Action serves as enhancement that supports a purposeful direction claim. The claim filed here is not incidental to Montana. The harm caused by Murphy's contacts with Montana arising from the fraudulent transfer would be felt in Montana by Murphy's obstruction of the state court's order to take possession of the Vehicle and further delaying or denying Doverspike to satisfy a judgment in Montana. The Vehicle is licensed and titled in Montana. The underlying ownership dispute is already being handled by Montana. Murphy knew of the Vehicle's association with Montana and seeks to have the transaction between Allen and him validated in Montana state court. Murphy is being sued for intentionally inserting himself and interfering with the Montana Action Doverspike filed against Allen. Murphy accepted transfer and retains possession of the Vehicle despite having no legal title and knowing of the Montana court's attempts to collect the Vehicle. In

20

consideration of all these pleaded facts, Murphy received abundantly fair notice that he may be required to appear in a Montana court. Though Murphy's burden may be greater in Montana, he purposefully inserted himself into the forum by his involvement in the Montana Action.

## III.   Transfer of Venue

Federal courts may transfer a case to another district where the dispute may have originally been brought, for convenience of parties, witnesses, and in the interest of justice. 28 U.S.C. § 1404(a). Courts engage a two-step analysis when determining whether to transfer a case: (1) whether the case could have been brought in the forum the moving party seeks to transfer; and (2) case-by-case consideration of convenience and fairness. *See Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

### a.  Montana

Venue proves proper in this Court because venue is proper in a federal court situated in the same district which a state action is removed. 28 U.S.C. § 1441(a). This case was filed in Montana's First Judicial District Court. That court falls within the Court's district. Murphy removed the case on April 7, 2021. (Doc. 1). The Court must then consider whether Florida remains a more appropriate venue for this case.

21

### b.  Transfer to Florida

A court should consider a number of factors when it determines whether another forum proves more appropriate for a case. Those factors include: (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interest of justice. *Id*. The moving party carries the burden of showing that the proposed district represents a more appropriate forum. *Jones v. GNC Franchising. Inc.*, 211 F.3d 495, 497 (9th Cir. 2000).

A court may also consider: (1) location where agreements were negotiated or executed, (2) state that is most familiar with governing law, (3) plaintiff's forum choice, (4) parties' contacts with forum, (5) contacts relating to present cause of action, (6) cost of litigation in each forum, (7) availability of compulsory process to compel participation of non-party, and (8) ease of access to evidence. *Jones*, 211 F.3d at 498–99. "No single factor is dispositive, and district court has broad discretion to adjudicate motions for transfer." *Park*, 964 F. Supp. 2d at 1093.

### i.   Florida as Venue

Murphy asserts that this claim could have been brought in the transferee forum. All the named Defendants reside in Florida and a substantial portion of the events took place there. (Doc. 18 at 11); *see* 28 U.S.C. § 1391(b)(1)–(2). Doverspike does not contest whether venue would be proper in Florida.

###### ii.    Convenience and Fairness

Murphy argues that Florida proves a more convenient forum because the Vehicle is claimed to be in Florida. (Doc. 18 at 11). Murphy also claims there would be greater litigation costs because any witnesses needed to testify must travel to Montana as none reside there. *Id*. at 12. Murphy claims that Doverspike would suffer no inconvenience from a transfer because Doverspike already has access to counsel in Florida. *Id*. Murphy emphasizes that the Court owes less deference to Doverspike's choice of forum as Montana does not represent her home forum. *Id*. at 13.

Doverspike asserts that she brought the case in Montana because of the forum state's strong contacts with the dispute. (Doc. 19 at 18). Montana represents the forum in which Doverspike suffered the offensive actions and where the court appointed the Receiver to oversee assets including the Vehicle. *Id*. at 17–18. Doverspike notes Murphy's failure to specify any witnesses in Florida who could further any claims or defenses and would also benefit from the transfer. *Id*. at 19. Murphy mentions only his patients, protected from disclosure by HIPAA, as potential witnesses and claims. (Doc. 21 at 5). Murphy claims there are other witnesses in Florida, but fails to elaborate as to who they are. *Id*.

A transfer to Florida goes against the interest of justice. This action centers on the ownership dispute in Montana. Murphy has failed to meet his burden of

23

showing that Florida is a more appropriate forum. The Court will decline to transfer this matter.

## ORDER

Accordingly, **IT IS ORDERED** that:

- Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 17) is **DENIED**;

- Defendant's Motion to Transfer Venue (Doc. 17) is **DENIED**.

Dated the 10th day of August, 2021.

Brian Morris, Chief District Judge
United States District Court

24